# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MARCUS JENKINS, | ) |
| | ) |
| Plaintiff, | ) No. 12 C 3836 |
| | ) |
| vs. | ) |
| | ) Judge Ronald A. Guzmán |
| WEXFORD HEALTH SOURCES, | ) |
| INC., RONALD SCHAEFER, M.D. | ) |
| and SHANAL BARNETT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants pursuant to 42 U.S.C. § 1983 for their alleged violations of his Eighth Amendment rights. Defendants have filed Federal Rule of Civil Procedure ("Rule") 56 motions for summary judgment. For the reasons set forth below, the Court grants the motions.

## Facts

At all relevant times, plaintiff was an inmate at the Illinois Department of Corrections' Stateville facility, defendant Wexford was the medical service provider for Stateville, defendant Schaefer was a physician at Stateville and defendant Barnett was a medical technician at Stateville. (Pl.'s Resp. Wexford & Schaefer's LR 56.1(a) Stmt. ¶¶ 2-4, 6.) While at Stateville, plaintiff went to its asthma clinic every four months, where he was examined by a doctor and given prescriptions for: (1) a Qvar inhaler, which was to be used twice a day to prevent an asthma attack; and (2) an Albuterol inhaler, which was to be used four times a day as needed to alleviate an asthma attack. (Wexford & Schaefer's LR 56.1(a) Stmt., Ex. E, Pl.'s Dep. at 11-12, 25-26; *id.*, Ex. B, Pl.'s Med. Records at 00027-28, 00032-33.)

Defendant Schaefer examined plaintiff at Stateville's September 21, 2010 and February 16, 2011 asthma clinics, noted both times that plaintiff had "good control" of his asthma and refilled plaintiff's prescriptions. (*Id.*, Ex. B, Pl.'s Med. Records at 00027-28, 00032-33; *id.*, Ex. A, Schaefer Dep. at 29-38; Pl.'s Resp. Wexford & Schaefer's LR 56.1(a) ¶¶ 14, 16.)

Though each Albuterol inhaler should last about six months, plaintiff says the inhaler he received after the February 16, 2011 clinic was nearly empty by the end of April 2011 and completely empty by May 4, 2011. (*See* Wexford & Schaefer's LR 56.1(a) Stmt., Ex. A, Schaefer Dep. at 60-61; Pl.'s LR 56.1 Stmt., Ex. A, *Pro Se* Compl., Ex. 1, Letter from Pl. to Schaeffer [sic] (Apr. 27, 2011); *id.*, Ex. 2 Letter from Pl. to Schaeffer [sic] (May 4, 2011).) Consequently, between late April and May 9, 2011, plaintiff says he made a written refill request through the prison's established process, asked Barnett for a refill and sent three letters requesting refills to Schaefer. (Wexford & Schaefer's LR 56.1(a) Stmt., Ex. E, Pl.'s Dep. at 56-57; Pl.'s LR 56.1 Stmt., Ex. A, *Pro Se* Complaint, Ex. 2, Letter from Pl. to Schaeffer [sic] (May 4, 2011); *id.*, Ex. 4, Letter from Pl. to Schaeffer [sic] (May 9, 2011).) Schaefer says he rarely sees letters from inmates, and in any event, did not see the letters from plaintiff. (Wexford & Schaefer's LR 56.1(a) Stmt., Ex. A, Schaefer Dep. at 20-24.) Barnett has no recollection of plaintiff asking her for a refill, but says it is her practice to note such requests in an inmate's medical file. (Pl.'s Resp. Barnett's LR 56.1(a) Stmt. ¶¶ 5-15.) Plaintiff's medical records do not reflect that he requested a refill from Barnett or anyone else between February 16, 2011 and May 10, 2011. (*Id.* ¶¶ 16-17; *see* Wexford & Schaefer's LR 56.1(a) Stmt., Ex. D, Shute Dep. at 41-43; *see generally id.*, Ex. B, Pl.'s Med. Records.)

In March and April 2011, Wexford launched an asthma initiative to educate patients about the causes and treatment of the condition and "to identify patients whose asthma may not be in control." (*See* Wexford & Schaefer's LR 56.1(a) Stmt., Ex. G, 2011 Asthma Care Initiative at 2 (Apr. 11, 2011); *see also id.*, Asthma Care Initiative: Asthma Training Tool (Mar. 4, 2011); *id.*, Asthma Care Initiative: Focus on Education (Mar. 4, 2011); *id.*, Asthma Care Initiative: Focus on Control (Mar. 29, 2011).) The initiative documents state that airway inflammation should be treated with regular use of a "maintenance" inhaler like Qvar and airway constriction should be treated with a "rescue" inhaler like Albuterol. (*Id.*, Asthma Care Initiative: Asthma Training Tool at 2 (Mar. 4, 2011); *id.*, 2011 Asthma Care Initiative at 2-3 (Apr. 11, 2011).) They also state that "increasing use of [an Albuterol inhaler] or [use of Albuterol] more than two days a week for symptom relief . . . generally indicates inadequate control of asthma and the need for initiating or intensifying anti-inflammatory therapy." (*Id.*, Asthma Care Initiative: Focus on Control at 2 (Mar. 29, 2011).) Accordingly, the policy directs doctors and pharmacists to "dispens[e] . . . one [Albuterol] inhaler every 180 days" (*id.*, 2011 Asthma Care Initiative at 2 (Apr. 11, 2011)), and to write on each inhaler: "1-2 puffs only when needed[.] [R]epeat in 4-6 hours if needed[.] (**If no relief please go to [Health Care Unit.]**)" (*Id.*, 2011 Asthma Care Initiative: Focus on Control at 2 (Mar. 29, 2011)) (emphasis original). Moreover, it states:

> If a patient presents with an empty [Albuterol] canister prior to the authorized refill date . . . . [t]he patient should be evaluated by a clinician, and improved asthma control should be sought. If a clinician is not available[,] the patient should be held and observed until he/she can be evaluated.
>
> **This is not to be interpreted as a limit on [Albuterol] inhalers for patients. If it is determined that a patient needs an inhaler after evaluation, please order one and have it dispensed. . . .**

(*Id.* at 2-3) (emphasis original).

On May 10, 2011, plaintiff was admitted to the infirmary, complaining of chest tightness and shortness of breath. (Pl.'s LR 56.1 Stmt. ¶¶ 21-22; Wexford & Schaefer's LR 56.1(a) Stmt., Ex. B, Pl.'s Med. Records at 00035-38.) He was given a breathing treatment, oral steroids, an Albuterol refill, and held overnight for observation. (Wexford & Schaefer's LR 56.1(a) Stmt., Ex. B, Pl.'s Med. Records at 00035-38.) There is no dispute that this was an appropriate course of treatment. (*Id.*, Ex. A, Schaefer Dep. at 51-52.)

On May 11, 2011, Dr. Shute examined plaintiff and noted that plaintiff's lungs were clear and he was relaxed. (*Id.*, Ex. D, Shute Dep. at 28-30, 33-34.) Shortly thereafter, plaintiff was discharged from the infirmary.

Plaintiff alleges that defendants violated his Eighth Amendment rights by refusing to refill his Albuterol inhaler and by limiting, for financial reasons, inmates' access to such inhalers. (*See* First Am. Compl. ¶ 4.)

## **Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only

when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Failing to provide medical treatment to an inmate violates the Eighth Amendment only if it constitutes deliberate indifference to an objectively serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quotations omitted). A defendant acted with deliberate indifference if "[he] was subjectively aware of the prisoner's serious medical need[] and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety from lack of treatment." *Id.*

The parties dispute whether the record suggests that plaintiff's asthma is a serious medical condition. The Court need not decide that issue, however, because there is no triable issue of fact as to deliberate indifference. Viewed favorably to plaintiff, the record does not suggest that Schaefer even knew about, let alone deliberately ignored, plaintiff's requests for an Albuterol refill. With respect to Barnett, it suggests – at most – that she may have been negligent in addressing a single refill request plaintiff made to her verbally. In short, no reasonable trier of fact could conclude from the record that Schaefer or Barnett acted with deliberate indifference. Thus, they are entitled to judgment as a matter of law on plaintiff's claims.

The same is true for Wexford, which can only be held liable under § 1983 if one of its policies caused the alleged constitutional violation. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). In his

complaint, plaintiff alleges that Shute told him Wexford had changed its policy on distributing Albuterol inhalers to save money. (*See Pro Se* Compl. ¶ 21; First Am. Compl. ¶ 4(b).) Shute denies making the statement, and Wexford's asthma policy says nothing about costs. (*See* Wexford & Schaefer's LR 56.1(a) Stmt., Ex. D, Shute Dep. at 45-47, 51-53; *see generally id.*, Ex. G, 2011 Asthma Care Initiative (Apr. 11, 2011); *id.*, Asthma Care Initiative: Asthma Training Tool (Mar. 4, 2011); *id.*, Asthma Care Initiative: Focus on Education (Mar. 4, 2011); *id.*, Asthma Care Initiative: Focus on Control (Mar. 29, 2011).) More importantly, and despite what he alleged in the complaint, plaintiff testified as follows:

> A.   . . . [Dr. Shute] told me that Dr. Schaeffer [sic] should have responded to my requests and that I didn't receive the inhaler because Wexford had changed their policy on distributing asthma inhalers.
>
> Q.   Is that everything you recall Dr. Shute telling you?
>
> A.   Yes.

(*Id.*, Ex. E, Pl.'s Dep. at 34.) Because there is no evidence that suggests Wexford had a policy of denying inmates Albuterol inhalers to save money, it is entitled to judgment as a matter of law on plaintiff's claims.

**<u>Conclusion</u>**

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to plaintiff's claims against defendants, who are entitled to judgment as a matter of law. Accordingly, the Court grants defendants' motions for summary judgment [83 & 94] and terminates this case.

**SO ORDERED.**                              **ENTERED:   October 7, 2013**

_____

**HON. RONALD A. GUZMAN**
**United States District Judge**